ESTATE OF BULLEN: THE STATE and another, Respondents, vs. BULLEN and others, Appellants.

THE STATE, Appellant, vs. BULLEN and others, Respondents.

*October 6—October 25, 1910.*

*Inheritance tax: Transfer "in contemplation of death:" Situs of personalty: When liability to tax accrues: Life insurance policies payable to wife: Statutes: Construction.*

1. The inheritance tax imposed by ch. 44, Laws of 1903, is a tax upon the right to receive property,—in other words, a tax on the transfer or transaction, not on the property itself.
2. For the purposes of the inheritance tax law, personal property has its legal situs at the domicile of the decedent, and the state has power to impose a tax upon the succession or transfer thereof, where the decedent is a resident of the state, although the property was never within the state and although the transfer was made outside of the state.

Estate of Bullen: State v. Bullen, 143 Wis. 512.

3. One B., formerly a resident in Chicago, came to this state to reside some sixteen years before his death, but continued until his death to transact some business in Chicago, where the major part of his personal estate, in the form of moneys deposited in checking accounts in Chicago banks, stocks, bonds, notes, and insurance policies, always remained. About four years prior to his death he executed in Chicago, to an Illinois trust company, a conveyance of all said personal estate, in trust for the use of himself, his wife, and certain relatives, nonresidents of this state, during life, and upon his death for the equal benefit of his four sons, among whom the principal was eventually to be divided. At the time of making said trust conveyance B. was afflicted with locomotor ataxia and was aware of the fact. The trust conveyance reserved to the grantor the right to direct and control the distribution of the trust estate and to revoke and vacate the trust at any time during his life, and he received during his lifetime the entire net income from the trust estate. Having technically repossessed himself of the securities for a brief period, by a direction to the trust company to hold them for him instead of under the trust, B., about one year before his death, executed a further assignment in trust confirming and re-establishing the original trusts; but the manual possession of the securities remained at all times with the trust company, and the legal title was vested in it at the time of B.'s death. Prior to B.'s death the trustee made return of the property to the tax assessors of Illinois and paid the taxes levied thereon in that state, and after his death it paid an inheritance tax in Illinois upon all of said property. *Held*, that said conveyance in trust was made "in contemplation of death," and was "intended to take effect in possession or enjoyment after such death," within the meaning of ch. 44, Laws of 1903; and the property, though never brought within this state, must be regarded as having its situs here and must pay the inheritance tax imposed by the laws of Wisconsin.

4. In such case the liability accrued at the time of the transfer and is therefore not affected by the fact that at the time of the grantor's death the trust property was in another state, with the legal title in a nonresident trustee.

5. A life insurance policy payable to decedent's wife and which she joined with him in conveying to the trust company, though without relinquishing her rights therein, formed no part of his estate and hence was not subject to the inheritance tax.

6. A statute adopted from another state is taken with the judicial construction which it had previously received in that state.

APPEALS from a judgment of the circuit court for Waukesha county: MARTIN L. LUECK, Circuit Judge. *Affirmed.*

The circuit court for Waukesha county fixed an inheritance tax upon the estate of George Bullen, deceased, at $20,184.71. The *Bullen* heirs and the state appealed, which appeals were heard together. It appears from the established facts that George Bullen, a citizen of Wisconsin, died at his home near Oconomowoc September 10, 1908, aged sixty-two years. He left a widow and four sons, three of whom are minors. At the time of his death he had on deposit in checking accounts in Chicago banks $12,109.77, and was possessed of his home known as "Minnewoc" in Waukesha county, valued at $56,000, and the chattels appurtenant thereto, agreed to be worth $20,000. The remaining property in which Mr. Bullen had any interest prior to his death consisted of certain stocks, bonds, notes, life insurance policies, etc., the title to which was vested in the Northern Trust Company, an Illinois corporation, as trustee, for the benefit of *Mrs. Bullen* and her four sons, who now appeal, and of Lucy E. Cleghorn, Annie Graham, Mary T. Harris, Victoria Bullen, and Helen Mary Harris, all nonresident aliens. They did not, nor did the Northern Trust Company, appear in either of the courts below or join in this appeal. No personal service was ever had on any of them. The Illinois property held by the Northern Trust Company, exclusive of the $25,000 insurance policy, was valued at $936,761.70. In 1892 Mr. Bullen, who formerly lived in Chicago, moved to Oconomowoc, but continued to transact some business in Chicago down to the time of his death. In 1900 he began negotiations with the Northern Trust Company with a view of transferring his property to it under a trust agreement. Various drafts of the instrument were made and discussed by the parties down to December 11, 1902, when an agreement denominated "an assignment in trust" was entered into in Chicago, and the bonds, stocks, notes, insurance policies, and other securities

therein mentioned were delivered to the trust company. The transfer of the securities was made on the date last mentioned by the delivery to the Northern Trust Company of the assignment in trust, together with the securities themselves. Such of the securities as did not pass by delivery were also assigned by independent instruments, such as the usual indorsement on a stock certificate and the usual form of assignment of insurance policy. The trust assignment was dated December 11, 1902, and the receipt of the Northern Trust Company appended to it bears the same date. A certificate of acknowledgment, however, was made afterwards on April 4, 1903. These securities had always been in a safety-deposit box in Chicago, and the legal title to them was held by the trustee at the time of Mr. Bullen's death, and the securities themselves had never been within the state of Wisconsin.

The assignment in trust provided for the investment and reinvestment of the trust estate, and directed the payment of $900 per annum to Lucy E. Cleghorn, a niece, and $900 per annum to Annie Graham, a sister, both of whom resided out of the United States at the time of Mr. Bullen's death. It directed the trustee to pay the cost of maintenance of a house in London, Canada, during the lives of Mr. Bullen's two sisters, Mary T. Harris and Victoria Bullen, and his niece Helen Mary Harris. It directed the trustee to hold his house and farm known as "Minnewoc" and the chattels appurtenant thereto, and to spend the necessary amount in maintaining them, for the benefit of *Mrs. Bullen* and the children. It gave to *Mrs. Bullen* for life one third of the remainder of the income from the trust estate, and directed that the other two thirds should be paid to Mr. Bullen during his lifetime and after his death should be set apart for his four sons; and it directed the distribution of the principal to the sons, each to have one third of his share when he should reach the age of twenty-five years, and the other two thirds when he should reach the age of thirty years. It reserved the right to direct

and control the distribution of the trust property and to re-
voke and vacate the trust at any time during Mr. Bullen's
lifetime.

Mr. Bullen, having technically repossessed himself of the
securities for a brief period, executed a further assignment in
trust, dated May 22, 1907, but the manual possession of the
securities had remained at all times since 1902 with the
Northern Trust Company, Mr. Bullen having repossessed
himself of them merely by directing the trust company to
hold them for him as his agent instead of trustee.    Prior to
the death of George Bullen the Northern Trust Company
made returns to the tax assessors of Cook county, Illinois, of
the value of the trust estate, and paid the taxes thereon levied
on the valuation made by said assessors.    The trust company
also paid, after Mr. Bullen's death, an inheritance tax on all
of said property in Illinois, including the bank deposits.
When the assignment in trust was drawn Mr. Bullen was suf-
fering from locomotor ataxia and was aware of the fact.
*Mrs. Bullen* was also in ill health; and the fourteenth para-
graph of the trust agreement declares the intention of giving
the trustee "full power and authority to manage the said trust
estate for the benefit of the several beneficiaries thereof, par-
ticularly my said wife during her lifetime, in the event I
should be unable, at any time prior to my death, to give my
affairs such attention as they may demand, and at all events,
after my death, in like manner as I myself might or could
manage it, if living and in good health."    The sixteenth
paragraph provides for the distribution of any trust estate not
specifically disposed of, "among my heirs at law, as provided
by the laws of Illinois with reference to intestate property,
and the laws of said state shall govern in the interpretation of
this instrument."    In addition to the personal property
which passed under the assignment in trust there was certain
real estate, one parcel of which, "Minnewoc," Mr. Bullen's
residence, is located in Wisconsin.    *Mrs. Bullen* declined to

sign the deeds of the real estate, refusing to relinquish her dower and other rights therein, unless Mr. Bullen should make some provision in the trust assignment for an income for her mother. *Mrs. Bullen* refused at first to assign the insurance policy for $25,000, and the policy, being payable to her, could not be transferred without her consent. She finally reached an agreement as to this policy with Mr. Bullen and executed the assignment of it. The deeds having never been signed, the deed of "Minnewoc" to the trustee did not pass the homestead rights. The Northern Trust Company, having no right to do business in Wisconsin, has confined itself to the trust estate delivered to it in Illinois, and has avoided coming within the jurisdiction of this court. The only interested parties over whose persons the court has jurisdiction are *Mary Lenore Bullen* and her four sons, the three minors appearing through Mr. Newbury, their guardian *ad litem.*

For the *State of Wisconsin* there was a brief by the *Attorney General, Russell Jackson,* deputy attorney general, and *A. C. Titus,* first assistant attorney general, and oral argument by *Mr. T. W. Haight, Mr. Jackson,* and *Mr. Titus.*

For the appellants *Mary Lenore Bullen* and others there were briefs by *Montgomery, Hart & Smith* and *Frame & Blackstone,* attorneys, and *C. W. Newbury,* guardian *ad litem,* and oral argument by *J. R. Montgomery* and *H. J. Frame.* They cited, among other cases, *In re Joyslin's Estate,* 76 Vt. 88; *State Tax on Foreign-held Bonds,* 15 Wall. 300; *Gibson v. Conn. F. Ins. Co.* 77 Fed. 561, 565; *Metropolitan L. Ins. Co. v. New Orleans,* 205 U. S. 395; *People v. Griffith,* 245 Ill. 532; *In re Taxation of Masury's Estate,* 51 N. Y. Supp. 331, affirmed 159 N. Y. 532; *Estate of Keeney,* 194 N. Y. 281; *In re Cummings' Estate,* 118 N. Y. Supp. 684; *Neilson v. Russell,* 76 N. J. Law, 27, 69 Atl. 476.

KERWIN, J. We shall first consider the appeal on the part of the *Bullen* heirs. Counsel say in their brief that there is

but one question for determination by this court, namely: "Can the state of Wisconsin tax a contract made by one of its residents when in a foreign state, whereby he transfers property which is then in the foreign state and which never has been in the state of Wisconsin, even though constructively the transfer was 'intended to take effect in possession or enjoyment at or after the death of the transferor?'" It is argued that the tax is not a tax of property, but an excise tax imposed on the transfer, and, the transfer being made in a foreign state of property within that state, this state cannot tax such property held by the Northern Trust Company. It is said that the tax is "not a tax on the person who transmits, or the person who receives, but it is a tax on the right of transmission." This question was considered and discussed by this court in *Nunnemacher v. State,* 129 Wis. 190, 108 N. W. 627, and the conclusion arrived at, after a review of the authorities, that inheritance taxes are not taxes upon property, "but upon the right to receive property." And in *Beals v. State,* 139 Wis. 544 (121 N. W. 347), at page 552, this court, referring to the *Nunnemacher Case,* said: "Inheritance taxation was held to be constitutional in the *Nunnemacher Case* on the ground that it is excise taxation levied on the transfer of property and not on the property itself. . . ." And in summing up the points decided the court said: "The inheritance tax levied by ch. 44, Laws of 1903, is not a tax upon property or property rights in any sense, but purely an excise tax levied upon the 'transfer' or transaction, and merely measured in amount by the amount of property transferred." Again, in *State v. Pabst,* 139 Wis. 561, 121 N. W. 351, the rule laid down in the *Nunnemacher* and *Beals Cases* was referred to and approved. The tax, therefore, under the decisions of this and other courts is a tax upon the transfer, transaction, or right to receive property. *Nunnemacher v. State, supra; Beals v. State, supra.* The theory of an inheritance tax is that it is not one on property, but upon the right of succession. 27

Am. & Eng. Ency. of Law (2d ed.) 338; *State v. Pabst, supra.*

But it is strenuously argued by counsel for the heirs that the property taxed being in the state of Illinois, and the transfer from Bullen to the Northern Trust Company having been made in the state of Illinois and outside of the state of Wisconsin, the Wisconsin inheritance tax law does not reach such property. This contention involves the question of the situs of the property of Bullen transferred to the trust company and the application of our inheritance law to such situation. The following provisions of the inheritance law of this state— sec. 1087—1, Stats. (Supp. 1906: Laws of 1903, ch. 44, sec. 1; Laws of 1903, ch. 249, sec. 1; Laws of 1905, ch. 96, sec. 1)—are pertinent to the present inquiry:

"A tax shall be and is hereby imposed upon any transfer of property, real, personal or mixed, or any interest therein, or income therefrom in trust or otherwise, to any person, association or corporation, except county, town or municipal corporations within the state, for strictly county, town or municipal purposes, and corporations of this state organized under its laws solely for religious, charitable or educational purposes, which shall use the property so transferred exclusively for the purposes of their organization, within the state, in the following cases:

"(1) When the transfer is by will or by the intestate laws of this state from any person dying possessed of the property while a resident of the state.

"(2) When a transfer is by will or intestate law, of property within the state or within its jurisdiction and the decedent was a nonresident of the state at the time of his death.

"(3) When the transfer is of property made by a resident or by a nonresident when such nonresident's property is within this state, or within its jurisdiction, by deed, grant, bargain, sale or gift, made in contemplation of the death of the grantor, vendor or donor, or intended to take effect in possession or enjoyment at or after such death.

"(4) Such tax shall be imposed when any such person or corporation becomes beneficially entitled, in possession or ex-

pectancy, to any property or the income thereof, by any such transfer whether made before or after the passage of this act; provided, that property or estates which have vested in such persons or corporations before this act shall take effect, shall not be subject to a tax; and provided further, that contingent interests created by the will of any person who died prior to the passage of this act shall not be taxed."

This statute was borrowed from New York; therefore the judicial construction given it there is significant in interpreting it here. *Draper v. Emerson,* 22 Wis. 147; *Westcott v. Miller,* 42 Wis. 454; *Dutcher v. Dutcher,* 39 Wis. 651; *Pomeroy v. Pomeroy,* 93 Wis. 262, 67 N. W. 430.

"It is a settled rule in the construction of statutes, that where a statute has received a judicial construction in another state, and is then adopted, it is taken with the construction which has been so given it." *Draper v. Emerson, supra.*

Prior to its adoption here the statute received judicial construction in New York, and it was held that in respect to personal property not within the state at the time of the resident decedent's death the court will apply the maxim *Mobilia sequuntur personam. Estate of Swift,* 137 N. Y. 77, 32 N. E. 1096; *Estate of Cornell,* 170 N. Y. 423, 63 N. E. 445. The effect of this rule is to make the legal situs of the property at the domicile of the decedent. As we have seen, Mr. Bullen reserved the right to direct and control the distribution of the trust property and to revoke the trust at any time during his life, and received during his lifetime the entire net income from the trust estate held by the Northern Trust Company. The trust agreement contains the following clause:

"Fifth. I, the donor, expressly reserve the right to direct and control the disposition of the said trust property and estate, to revoke and vacate this trust at any time during my life, to enter into and upon and take possession of the same, or any part thereof, to require a reconveyance to me of the said trust property, or any part thereof, and to dispose of it as I may see fit. During my lifetime the principal and in-

come shall be used for such beneficiaries and in such manner as I may from time to time appoint, and in default of any appointment during my lifetime, and, at all events, after my death, the same income and the said principal shall be applied, paid over or held as herein provided."

We think under the authorities and the established facts in this case that the situs of the property covered by the trust agreement was in the state of Wisconsin, where Bullen lived and died, and was subject to the Wisconsin inheritance tax. *Estate of Swift, supra; Estate of Cornell, supra; In re Corning's Estate,* 3 Misc. 160, 23 N. Y. Supp. 285; *Frothingham v. Shaw,* 175 Mass. 59, 55 N. E. 623; *Ford v. Ford,* 70 Wis. 19, 33 N. W. 188.  It is true there is some conflict of authority on the point.  Counsel for the heirs in their briefs cite us to *In re Joyslin's Estate,* 76 Vt. 88, 56 Atl. 281, which appears to be out of harmony with the rule laid down in New York and Massachusetts.  We feel constrained to hold to the New York and Massachusetts rule.  In *Frothingham v. Shaw,* 175 Mass. 59, 55 N. E. 623, the court holds the general rule to be that personal property for the purpose of taxation has its situs at the domicile of the owner; and although this rule leads to double taxation, that has not been accounted a sufficient objection to taxation of personal property to the owner during his life at the place of his domicile, nor sufficient objection to the imposition of succession taxes after his death.

In *Estate of Swift, supra,* there is a full discussion of the subject, and the court concludes that as to personal property of a resident decedent, wheresoever situated, whether within or without the state, it is subject to the tax imposed by the act.

In *Estate of Cornell, supra,* it was held that a gift of securities, under an agreement that the donor should have during his life such part of the net income as he desired, but the donee to have possession and management of the securities, makes the donee the holder in trust until the death of the

donor, and such property is, therefore, taxable under the Laws of 1896, ch. 908, § 220, subd. 3, which provides:

"When the transfer is of property made by a resident or by a nonresident, when such nonresident's property is within this state, by deed, grant, bargain, sale or gift made in contemplation of the death of the grantor, vendor or donor, or intended to take effect, in possession or enjoyment, at or after such death. Such tax shall also be imposed when any such person or corporation becomes beneficially entitled, in possession or expectancy, to any property or the income thereof by any such transfer, whether made before or after the passage of this act. . . ."

See also *Estate of Brandreth,* 169 N. Y. 437, 62 N. E. 563. In *Estate of Keeney,* 194 N. Y. 281, 87 N. E. 428, under the transfer tax law before referred to, the court said (page 287) :

"It is a matter of common knowledge that for this purpose trusts or other conveyances are made whereby the grantor reserves to himself the beneficial enjoyment of his estate during life. Were it not for the provision of the statute which is challenged, it is clear that in many cases the estate, on the death of the grantor, would pass free from tax to the same persons who would take it had the grantor made a will or died intestate. It is true that an ingenious mind may devise other means of avoiding an inheritance tax, but the one commonly used is a transfer with reservation of a life estate. We think this fact justified the legislature in singling out this class of transfers as subject to a special tax.

"It is also urged that the trust property was at the time of the intestate's death in another state with the legal title in the trustee. This does not affect the liability of the transfer to taxation. The liability in this case accrued at the time of transfer, no matter when imposed."

In the instant case Bullen reserved and enjoyed a life estate in the property transferred to the Northern Trust Company. Sec. 2443, Stats. (1898), provides that the jurisdiction of the county court extends to estates of all persons deceased who were at the time of their deaths inhabitants of or residents of the same county, or who shall die without the

state having any estate within such county to be administered. And by ch. 44, Laws of 1903 (the inheritance tax law), such courts are given authority to determine the inheritance tax which shall be paid by the estate of decedent. And in sec. 1087—24, Stats. (Supp. 1906: Laws of 1903, ch. 44, sec. 23), the words "estate" and "property" are defined to mean "the real and personal property or interest therein of the testator, intestate, grantor, bargainor, vendor or donor passing or transferred to individual legatees, devisees, heirs, next of kin, grantees, donees, vendees or successors, and shall include all personal property within or without the state."

We think it quite clear, upon the established facts, that the transfer was made "in contemplation of death" within the meaning of the law (*State v. Pabst,* 139 Wis. 561, 121 N. W. 351), and was also "intended to take effect in possession or enjoyment at or after such death." Sec. 1087—1, subd. 3, Stats. (Supp. 1906: Laws of 1903, ch. 44, sec. 1); *Estate of Green,* 153 N. Y. 223; *Estate of Brandreth, supra; Estate of Cornell,* 170 N. Y. 423, 63 N. E. 445; *Estate of Keeney,* 194 N. Y. 281, 87 N. E. 428. We conclude that the property covered by the trust agreement was subject to the inheritance tax.

The only error urged on the state's appeal is, that the $25,000 insurance policy assigned to the trust company should have been taxed. It appears that this policy was made payable to *Mrs. Bullen* as beneficiary, and no right reserved in it or otherwise to change the beneficiary. It was assigned to the trust company, but it does not appear that *Mrs. Bullen* relinquished her rights therein; therefore this property remained the property of *Mrs. Bullen* and was not a part of Mr. Bullen's estate. The court below, therefore, was right in refusing to tax it.

Some other points are made on both appeals, but from the view we take of the case consideration of them is unnecessary.

*By the Court.*—The judgment of the court below is affirmed on both appeals.