IN RE ESTATE OF OPPENHEIMER. DAVIS ET AL., APPEL-LANTS, *v.* STATE OF MONTANA ET AL., RESPONDENTS.

(No. 5,845.)

(Submitted January 5, 1926. Decided January 20, 1926.)

[243 Pac. 589.]

*Inheritance Taxes—Husband and Wife—Antenuptial Agreement—When Transfers Taxable.*

Inheritance Taxes—Right of Succession—State may Tax.
   1. The beneficiary of an estate has no claim by right of blood or otherwise to the estate of a decedent, except as the law gives it to him, and the state may impose such taxes or conditions on distributive shares as it deems proper.

Same—What Transfers or Gifts Taxable.
   2. Under section 1, Chapter 65, Laws of 1923, *held* that where a transfer or gift is not to take effect in possession or enjoyment until after the death of the transferor or donor, whether made in contemplation of death or not, it is subject to the inheritance tax therein provided for.

Same—Antenuptial Agreements—When Gifts Taxable.
   3. Where under an antenuptial agreement certain sums of money were to be paid to the wife after the death of the husband in certain

---

   1. Constitutionality of succession taxes, see notes in 1 Ann. Cas. 30; 7 Ann. Cas. 1061; 8 Ann. Cas. 159; 12 Ann. Cas. 953; Ann. Cas. 1913D, 757. See, also, 26 R. C. L. 199.
   2. Liability to succession tax of transfer made before death, see notes in 14 Ann. Cas. 109; Ann. Cas. 1915B, 1089.
   3. Applicability of Succession Tax Law to antenuptial contracts, see note in 4 A. L. R. 461.

annual installments by his executors, in consideration of her relinquishment of her right of dower and any other claims she might be entitled to assert against his estate as his widow or next of kin, the total amount of such gifts was subject to the inheritance tax provided for by Chapter 65, Laws of 1923.

Same—When Gifts or Transfers not Taxable.

4.  For a gift or transfer to escape the imposition of an inheritance tax, it must have been made for a valuable consideration *in praesenti.*

Same—Imposed upon Right to Transfer, not upon Estate.

5.  The inheritance tax is imposed upon the right to transfer, not upon the estate.

---

[1]  Courts, 15 **C. J.**, sec. 315, p. 925, n. 46, p. 926, n. 51.    Descent and Distribution, 18 **C. J.**, sec. 2, p. 804, n. 53.    Taxation, 37 **Cyc.**, p. 1553, n. 60.

[2]  Taxation, 37 **Cyc.**, p. 1567, n. 54.

[3]  Taxation, 37 **Cyc.**, p. 1568, n. 64, p. 1581, n. 72.

[4]  Taxation, 37 **Cyc.**, p. 1565, n. 38.

[5]  Taxation, 37 **Cyc.**, p. 1553, n. 60.

*Appeal from District Court, Silver Bow County; J. J. Lynch, Judge.*

PROCEEDING by A. J. Davis, Sr., and others, in the matter of the assessment and determination of inheritance taxes due from the estate of Joseph E. Oppenheimer, deceased.    From an order sustaining objections of the State Board of Equalization to the report of the special appraiser of the estate, the petitioners appeal.    Affirmed.

*Mr. William Meyer, Messrs. Kremer, Sanders & Kremer, Mr. J. A. Poore* and *Mr. Charles R. Leonard,* for Appellants, submitted a brief; *Mr. J. Bruce Kremer* and *Mr. Poore* argued the cause orally.

It is our contention that if the transfer of property made by deed, grant, bargain or sale was in exchange for a fair consideration in money or money's worth, or for a valuable consideration, there is no tax, even though the transfer was made in contemplation of death, and even though the transfer was intended to take effect in possession or enjoyment at or after death.    (See *In re Orvis Estate,* 223 N. Y. 1, 3 A. L. R. 1636, 119 N. E. 88; *In re Reynolds' Estate,* 169 Cal. 600,

147 Pac. 269; *In re Wadsworth's Estate,* 100 Misc. Rep. 439, 166 N. Y. Supp. 716; *Blair* v. *Herold,* 150 Fed. 199, 200; *In re Miller's Estate,* 78 N. Y. Supp. 930; *Knowlton* v. *Moore,* 178 U. S. 41, 44 L. Ed. 969, 20 Sup. Ct. Rep. 747 [see, also, Rose's U. S. Notes].

A fair consideration in money or money's worth was paid by Cornelia E. Bingham for all she is to receive under the prenuptial agreement. Epitomizing the consideration stated in the prenuptial agreement, we find that Cornelia E. Oppenheimer surrendered and transferred to Joseph E. Oppenheimer the following personal and property rights: (a) She agreed to become his wife; (b) She surrendered and transferred to him any and all property rights which she might be entitled to as his wife or widow. And in consideration thereof, Joseph E. Oppenheimer agreed to pay her, as stated in the agreement, $150,000.

Was the consideration which she gave in exchange for the payment to her of $150,000 a fair consideration in money or money's worth? A "fair" consideration means no more than honest or free from suspicion; it is not intended as the equivalent of "adequate," unless the inadequacy is such as to indicate a purpose on the part of the vendor to cheat or wrong his creditors. (*Ferguson* v. *Dickson,* 300 Fed. 961; *Myers* v. *Fultz,* 124 Iowa, 437, 100 N. W. 351; *Dunlop* v. *Thomas,* 28 Wash. 521, 68 Pac. 909.) The authorities are uniform in holding that "Marriage is the highest and most valuable of considerations; and that when a conveyance is made upon such consideration, the grantee, if guiltless of fraud, is in at least as firm and sure a position as if she had paid in money the full value of the property conveyed." (*Cohen* v. *Knox,* 90 Cal. 266, 13 L. R. A. 711, 27 Pac. 215; 2 Devlin on Real Estate, p. 1461, sec. 808c; *Magniac* v. *Thompson,* 7 Pet. 348, 8 L. Ed. 709 [see, also, Rose's U. S. Notes]; 30 C. J., p. 631, sec. 192; *In re Wadsworth's Estate, supra.*) Not only did she pay this most valuable of considerations, but she in addition

thereto released all of her dower and property rights in and to the entire estate of Joseph E. Oppenheimer. In exchange for these considerations he promised to pay to her $150,000, and in the event she did not survive him, then this amount was to go to her heirs or personal representatives—so that it was an absolute promise to pay in any event the sum of $150,000. It became a debt owing by his estate, and was so recognized in his will, for he directed his executors to pay it in accordance with his agreement. (*In re Baker's Estate*, 83 App. Div. 530, 82 N. Y. Supp. 390; *Hegeman* v. *Moon*, 131 N. Y. 462, 30 N. E. 487.) It was presented as a claim against the estate by Cornelia E. Oppenheimer, and allowed by the executors as such, and also by the judge.

The court's attention is especially called to the following cases involving antenuptial agreements, and in which it was sought to impose a transfer or inheritance tax: *In re Baker's Estate*, 83 App. Div. 530, 82 N. Y. Supp. 390; *In re Vanderbilt's Estate*, 184 App. Div. 661, 172 N. Y. Supp. 511; *Ferguson* v. *Dickson*, 300 Fed. 961; *In Matter of Schmoll*, 191 App. Div. 435, 181 N. Y. Supp. 542, 230 N. Y. 559, 130 N. E. 893; *Matter of Edgerton*, 35 App. Div. 125, 54 N. Y. Supp. 700, 158 N. Y. 671, 52 N. E. 1124.

The amount specified in the prenuptial agreement constituted a debt of the decedent owing at his death, and under the statute should have been deducted from the market value of the property of the estate and was not taxable. (See Chap. 65, Laws 1923.)

The prenuptial contract was not made in contemplation of death. The words "in contemplation of the death of the grantor" do not refer to that general expectation which every mortal entertains, otherwise every contract would be made with such contemplation, but rather the apprehension which arises from some existing condition of body or some impending peril. (*In re Baker's Estate, In re Vanderbilt's Estate, supra.*) There is nothing in the admitted facts in the case

at bar to show that Joseph E. Oppenheimer on June 30, 1921, expected to die, but rather that he expected to live, and his contract with Mrs. Bingham was made in contemplation of future happy years.

The state has the burden of proving that property is subject to the transfer tax (*Matter of Enston*, 113 N. Y. 174, 3 L. R. A. 464, 21 N. E. 87). Special tax laws are to be construed strictly against the government and favorable to the taxpayer; a citizen cannot be subjected to special burdens without clear warrant of law. (*Matter of Vassar*, 127 N. Y. 1, 27 N. E. 394; *In re Wadsworth's Estate*, 100 Misc. Rep. 439, 166 N. Y. Supp. 416.)

*Mr. L. A. Foot*, Attorney General, and *Mr. A. H. Angstman*, Assistant Attorney General, submitted a brief; *Mr. Angstman* argued the cause orally.

An analysis of the agreement in question will disclose that it was clearly intended to provide a substitute for dower and other rights of the widow. The money to be paid, by its terms, was intended to be in lieu of dower and other property rights of the widow.

There is a conflict among the authorities as to whether dower, as such, is subject to inheritance taxes. The following cases hold that it is: *Billings* v. *People*, 189 Ill. 472, 59 N. E. 798; affirmed, 188 U. S. 97, 47 L. Ed. 400, 23 Sup. Ct. Rep. 272 [see, also, Rose's U. S. Notes]; *People* v. *Field's Estate*, 248 Ill. 147, 33 L. R. A. (n. s.) 230, 93 N. E. 721; *Corporation Com.* v. *Dunn*, 174 N. C. 679, 94 S. E. 481; *In re Moffitt's Estate*, 153 Cal. 359, 20 L. R. A. (n. s.) 207, 95 Pac. 653, 1025; *In re Stewart's Estate*, 174 Cal. 547, 163 Pac. 902. In New York the widow's dower is not taxable. (*In re Church's Estate*, 80 Misc. Rep. 447, 142 N. Y. Supp. 284; *In re Stuyvesant's Estate*, 72 Misc. Rep. 295, 131 N. Y. Supp. 197.)

There are other jurisdictions holding that dower, as such, is not subject to the inheritance tax laws. For the purpose

of this case, however, it is not necessary to determine whether dower is subject to the tax.

In this case the $150,000 in question is not dower. It is as if the widow had elected to accept a bequest in lieu of dower. For the $150,000 is either a bequest, it having been referred to explicitly in the will, or it passes by virtue of the agreement which, as heretofore pointed out, was a substitution for dower. When a bequest or other transfer of property is accepted in lieu of dower, the bequest or transfer is taxable. (*State* v. *Lane*, 134 Ark. 71, 203 S. W. 17; *In re Osgood's Estate*, 52 Utah, 185, L. R. A. 1918E, 697, 173 Pac. 152; *In re Stuyvesant's Estate, supra; People* v. *Field*, 248 Ill. 147, 33 L. R. A. (n. s.) 230, 93 N. E. 721; *Dana* v. *Dana*, 226 Mass. 297, 115 N. E. 418; *Hill* v. *Treasurer*, 227 Mass. 331, 116 N. E. 509.)

Property passing by will, in discharge of an obligation resting on contract, is subject to an inheritance tax. (*State* v. *Mollier*, 96 Kan. 514, 152 Pac. 771; *State ex rel. McGill* v. *Gerhards*, 99 Kan. 462, 162 Pac. 1149; *In re Grogan's Estate*, 63 Cal. App. 536, 219 Pac. 87; *Carter* v. *Craig*, 77 N. H. 200, Ann. Cas. 1914D, 1179, 52 L. R. A. (n. s.) 211, 90 Atl. 598; *Clark* v. *Treasurer*, 226 Mass. 301, L. R. A. 1917D, 800, 115 N. E. 416; *Hill* v. *Treasurer*, 227 Mass. 331, 116 N. E. 509; *Richardson* v. *Lane*, 234 Mass. 403, 126 N. E. 44; *Ransom* v. *United States*, 20 Fed. Cas. 296, No. 11,574.)

The transfer in question is taxable because taking effect in possession and enjoyment at or after the death of deceased. (*Reish* v. *Commonwealth*, 106 Pa. St. 521; *In re Dolan's Estate*, 279 Pa. 392, 124 Atl. 176; *Carter* v. *Bugbee*, 91 N. J. L. 438, 103 Atl. 818; *In re Potter's Estate*, 188 Cal. 55, 204 Pac. 826; *New England Trust Co.* v. *Abbott*, 205 Mass. 279, 137 Am. St. Rep. 437, 91 N. E. 379; *People* v. *Porter*, 287 Ill. 401, 7 A. L. R. 1041, 123 N. E. 59; *People* v. *Shaffer*, 291 Ill. 142, 125 N. E. 887.)

There was not a fair consideration in money or money's worth. If Chapter 65, Laws of 1923, in so far as it relates to transfers by deed, grant, bargain, sale or gift, intended to take effect in possession or enjoyment at or after death, is to be limited to transfers without consideration, as contended for by counsel for appellants, then the kind of consideration must necessarily be limited to that referred to in the last sentence of subdivision 3, section 1 of Chapter 65. That sentence, in characterizing the kind of consideration, provides for "a fair consideration in money or money's worth." By adding the words "in money or money's worth," the legislature intended to limit the kind of consideration that would support a transfer not subject to the tax (assuming that a transfer with proper consideration is not taxable).

We have no quarrel with the cases cited by counsel to the effect that marriage is one of the highest of considerations. In fact, in the case of *Floyer* v. *Bankes,* 3 De Gex, J. & S. 306, the court of chancery of England said: "Marriage is, by the law of England, a valuable consideration for a contract, and that of the highest kind." But we respectfully contend that it is not a consideration "in money or money's worth." (See *State Street Trust Co.* v. *Treasurer,* 209 Mass. 373, 95 N. E. 851.)

The tax provided for by Chapter 65, Laws of 1923, does not impair vested rights. (*State* v. *Mollier,* 96 Kan. 514, 152 Pac. 771; *In re Hanna's Estate,* 119 Misc. Rep. 159, 195 N. Y. Supp. 749; *Gelsthorpe* v. *Furnell,* 20 Mont. 299, 39 L. R. A. 170, 51 Pac. 267; *Lacy* v. *State Treasurer* (Iowa), 121 N. W. 179.)

The transfer was made in contemplation of death. (*In re Minor's Estate,* 180 Cal. 291, 4 A. L. R. 456, 180 Pac. 813; *Chambers* v. *Larronde* (Cal.), 235 Pac. 1024; *Carter* v. *Bugbee,* 91 N. J. L. 438, 103 Atl. 818; *In re Bottomley's Estate,* 92 N. J. Eq. 202, 111 Atl. 605.)

[75 Mont. 186.]

The tax may not be evaded by any form of conveyance intended as a testamentary disposition. It is the policy of the law, as expressed in the statute, that no conveyance or transfer, designed as a distribution of the estate, whatever its form, shall be allowed to defeat or evade the tax. (*State Steel Trust Co.* v. *Stevens,* 209 Mass. 373, 95 N. E. 851; *Conway's Estate* v. *State* (Ind. App.), 120 N. E. 717, 720; *Lamb's Estate* v. *Morrow,* 140 Iowa, 89, 117 N. W. 118; *Babb* v. *Harrison,* 9 Rich. Eq. (S. C.) III, 70 Am. Dec. 203; *Lacy* v. *State Treasurer, supra.*)

MR. JUSTICE GALEN delivered the opinion of the court.

Joseph E. Oppenheimer, a resident of the city of Butte, died therein on January 31, 1924, leaving a large estate, disposition of which was by him provided in a last will and testament. The will was admitted to probate on March 1, 1924, and letters testamentary were regularly issued to the persons designated therein as executors. Subsequently the widow of the testator, Cornelia E. Oppenheimer, duly presented a claim against the estate for the sum of $150,000, being the amount agreed to be paid her under the terms of an antenuptial agreement, which claim was allowed in full by the executors on May 12, 1924, and by the judge on the day following. The antenuptial agreement is in writing, and was entered into between Joseph E. Oppenheimer, "as party of the first part," and Cornelia E. Bingham, "as party of the second part," in New York City, on June 30, 1921, and immediately thereafter the parties thereto were there married on the same day. By the terms of the prenuptial agreement, made the basis of the claim of Cornelia E. Oppenheimer against the estate of the deceased, it is provided:

"Whereas, a marriage is intended to be had between the parties of the first and second part, and the party of the first part is seized and possessed of a large estate;

"And whereas, it is agreed between the parties hereto that the party of the second part is not to have any dower, thirds, or right of dower in any real property of which the party of the first part is now or may hereafter become seized, possessed, and entitled to;

"And whereas, the party of the first part has agreed to make provision for the party of the second part in lieu of such dower, and in lieu of any claim that she, as the wife, or upon his death, as his widow, or as one of the heirs at law or next of kin, would be seized or possessed or entitled to;

"And whereas, the party of the second part has agreed to accept the sums and payments hereinafter mentioned in full for all claims of dower, or right of dower or thirds that she, the said party of the second part is entitled to as the wife, or will become entitled to as the widow, or heir at law or next of kin of the party of the first part:

"Now, therefore, in consideration of the said intended marriage and of the sum of one ($1.00) dollar to me, the said party of the second part, in hand paid, the receipt whereof is hereby acknowledged, I, Cornelia E. Bingham, the said party of the second part, hath granted, remised, conveyed, and forever quitclaimed and by these presents do grant, remise, release, and forever quitclaim unto the said Joseph E. Oppenheimer, the party of the first part, and to his heirs and assigns forever, all the dower, thirds, right and title to dower, thirds and of all other rights, title, interest, property, claim, and demand whatsoever at law or in equity of me, the said Cornelia E. Bingham, the party of the second part, of, in, and to all and every the lands, tenements, and real estate whereof the said Joseph E. Oppenheimer is now seized or possessed, or whereof he may hereafter become seized or possessed or entitled to, so that I, the said Cornelia E. Bingham, my heirs, executors, administrators, or assigns nor any other person or persons for me, them, or either of them, shall have, claim or demand any dower or thirds or any other right, title,

claim, or demand, of, in, or to the same or any part thereof, but thereof and therefrom shall be utterly barred and excluded forever, and I do further sell, assign, transfer, and set over unto the said Joseph E. Oppenheimer, his personal representatives and assigns any claim that I, after becoming his wife or widow, may be entitled to in the personal property which he now owns or may hereafter become possessed or entitled to, and I do hereby agree that, in consideration of the payments as hereinafter provided, I have and will hereafter make no further claim against him or against his estate, his heirs, executors, administrators, or assigns, upon his demise for any share to which I as his wife, widow, heir at law, and next of kin may be entitled in the personal property of which he may be possessed.

"And the party of the first part in consideration of the above release, conveyance, and assignment, agrees for himself, his heirs, executors, administrators, and assigns to pay to the party of the second part, or in the event that the party of the second part shall predecease the party of the first part, then to her heirs, executors, administrators, personal representatives, and assigns, the sum of one hundred and fifty thousand ($150,000) dollars, as follows, to wit: Twenty-five thousand ($25,000) dollars on or before one year after the date of his death; twenty-five thousand ($25,000) dollars on or before two years after the date of his death; twenty-five thousand ($25,000) dollars on or before three years after the date of his death; twenty-five thousand ($25,000) dollars on or before four years after the date of his death; fifty thousand ($50,000) dollars on or before five years after the date of his death.  *  *  *  "

And by the terms of the will of the testator it is provided: "Having heretofore entered into a prenuptial agreement with Cornelia E. Bingham (now my wife), which was accepted by her and the sums therein being intended and agreed to be in satisfaction and bar of her dower or other rights to which by the law of the state of Montana, or by custom or otherwise,

she might be entitled in or out of any property of which I was seized at the time of my marriage to her or afterwards, therefore in accordance with the terms of said agreement and in fulfillment and satisfaction thereof, I direct that my trustees shall pay to my wife, Cornelia E. Oppenheimer, the sums mentioned therein.''

We have heretofore had occasion to consider the effect of the terms of this contract as respects the right of the widow to a widow's statutory allowance for her support pending administration of the estate. (*In re Oppenheimer's Estate,* 73 Mont. 560, 238 Pac. 599.)

On June 23, 1925, John Gribbin, the special appraiser appointed by the court to ascertain and fix the fair market value of the property of the deceased at the time of his death and of any interests or transfers of property made by the deceased subject to an inheritance tax, made and filed a written report, by which there was allowed and deducted as a debt of the decedent the sum of $150,000 due unto Cornelia E. Oppenheimer pursuant to the terms of the antenuptial contract. The clear market value of the estate as shown by such report, was reduced by the amount of the payments required to be made under the prenuptial agreement. On July 27, 1925, the state board of equalization filed its written objections to the report of the special appraiser, in part as follows:

''Objects to the report of said special appraiser in allowing as a deduction the sum of ($150,000) one hundred and fifty thousand dollars, pursuant to the prenuptial agreement made between the decedent and Cornelia E. Oppenheimer, upon the ground and for the reason that the said sum of one hundred and fifty thousand ($150,000) dollars is not a proper deduction, and upon the ground and for the reason that the same represents money distributed from the estate of the above-named decedent, and that the same, pursuant to said agreement, took effect at and after the death of the above-named decedent,

and represents a transfer of property subject to the inheritance tax under the laws of this state."

The matter was regularly brought on for hearing before the court on July 27, 1925, after the conclusion of which the objections so made were sustained, and it was ordered that the executors forthwith pay to the county treasurer of Silver Bow county the amount of tax prescribed by statute upon the amount of money so to be paid to the widow under the terms of the antenuptial agreement.

On August 25, 1925, the executors of the will, together with the widow of the deceased, made and filed an application for a rehearing as to the matter of the assessment and determination of the inheritance tax due from the estate. Thereafter such application came on regularly for hearing before the court, and, after all evidence and stipulated facts were submitted, the court, on September 14, 1925, denied a rehearing. The appeal is from the order made sustaining the objections of the state board of equalization to the report of the special appraiser of the estate, and from the order denying the petition for a rehearing.

The assignments of error made present but a single question determinative of the appeal, *viz.:* Is the amount payable to Cornelia E. Oppenheimer under the antenuptial agreement properly subject to an inheritance tax?

So far as applicable to the question presented, the statute provides: "A tax shall be and is hereby imposed upon any transfer of property, real, personal or mixed, or any interest therein, or income therefrom in trust or otherwise, to any person, association or corporation * * * in the following cases: * * * (3) When the transfer is of property made by a resident or by a nonresident when such nonresident's property is within the state or within its jurisdiction, by deed, grant, bargain, sale or gift, made in contemplation of the death of the grantor, vendor, or donor, or intended to take

effect in possession or enjoyment at or after such, death.
\* \* \* '' (Laws 1923, Chap. 65, sec. 1.)

It is the appellants' contention that the gift or transfer of the amount of money stipulated in the prenuptial agreement was not made by will, by virtue of the laws of succession, nor made in contemplation of death, within the meaning of the statute, and consequently is not property subject to the tax. Many authorities are cited in support of this contention by the learned counsel for the appellants in an elaborate brief by them filed. Independent, however, of the decisions of other courts, we are called upon to interpret and declare the legislative intent expressed in our own statute. The opinions of other courts are helpful to us in giving correct meaning to the language employed; however, decisions are to be found, both in support and against the appellants' contention under like statutory provisions. (See note to *Re Minor* (Cal.), 4 A. L. R. 461.)

''The right of succession is not inherent, and the govern-
[1] ment may or may not permit it; so that when the privilege is granted, such conditions may be imposed as may appear desirable; and a law regulating succession of estates may prescribe such terms as the legislature may deem appropriate. \* \* \* The beneficiary of an estate has no claim by right of blood or otherwise to the estate of a decedent, except as the law gives it to him. The state has a right to take all of a decedent's property or to impose such taxes or conditions on distributive shares as it deems proper.'' (*State ex rel. Rankin v. District Court*, 70 Mont. 322, 225 Pac. 804.)

Many states have like statutes, embodying provisions similar to those under consideration, notably Wisconsin, New York, New Jersey, Massachusetts, Maine, Illinois, North Carolina, California and Utah, and in pursuance of our task we have read many decisions from the highest courts of these states. Our statute was copied from the inheritance tax law of Wis-

consin (Laws of Wisconsin, 1903, Chap. 44, sec. 1087, Wisconsin Statutes, Supp. 1906; *State ex rel. Murray* v. *Walker,* 64 Mont. 215, 210 Pac. 90), and the Wisconsin statute was borrowed from New York (*Estate of Bullen,* 143 Wis. 512, 139 Am. St. Rep. 1114, 128 N. W. 109). The courts of these states, however, are not in accord in construction of its provisions. (*Estate of Bullen, supra.*)

In accordance with the accepted canons of statutory con-
[2] struction (*State ex rel. Golden Valley County* v. *District Court, ante,* p. 122, 242 Pac. 421), it is plain that the lawmakers intended that the tax should attach to such gifts or transfers as were to become effective after the death of the donor or grantor.

Stripped of all unnecessary verbiage, as applied to the facts before us, the statute clearly requires the imposition of the tax ''when the transfer is of property made by a resident intended to take effect *in possession or enjoyment at or after * * * death,''* and independent of the decisions of other courts in the construction of language employed in similar statutes of other states, we have heretofore held, and we think correctly, that, where the transfer of property is not to take effect in possession or enjoyment until after the death of the transferor, whether in contemplation of death or not, it is subject to the tax. (*In re Estate of Schuh,* 66 Mont. 50, 212 Pac. 516.)

Upon reference to the antenuptial agreement, it is at once
[3] disclosed that the wife was not to be paid the amount of money agreed upon until after the death of Joseph E. Oppenheimer. The amounts so to become due are, by the contract, to be paid her within a period of five years after the death of the donor by his executors; such sums to be received and accepted in full of all claims, or dower, or right of dower, or thirds, that the widow would otherwise be entitled to receive as his widow or next of kin. Therefrom it is plain

that the payment was not intended to take effect in posses-
sion or enjoyment by Cornelia E. Oppenheimer until after
the death of her husband.  As well said by the supreme court
of New York: ''The law searches out the reality and is not
halted or controlled by the form.  *  *  *  The measure de-
termining the liability or freedom from liability to the tax
is the nature, the essence, the effect of the transfer.''  (*In re
Orvis Estate*, 223 N. Y. 1, 3 A. L. R. 1636, 119 N. E. 88.)

In the case before us the essence and effect of the prenuptial
agreement was to permit Joseph E. Oppenheimer, during his
lifetime, to use all of his property and money as he saw fit
as his own until his death, after which Cornelia E. Oppen-
heimer, as his widow, would be entitled to the payment of
certain sums of money in full satisfaction of all her rights to
dower or otherwise as his widow or heir.  It is obvious that,
had the section quoted above merely provided that personal
property passing by will or the laws of succession should be
subject to the tax, the intended scheme of taxation would
have been a complete failure, for the reason that transfers,
made only to take effect after the death of the grantor, would
or could be substituted for wills and intestacy in order to escape
the tax.  It is likewise apparent that the very purpose of
the antenuptial contract before us was to settle all property
rights of the intended wife after the marriage, and upon the
death of her husband, in lieu of testamentary or intestate dis-
position.  It was never intended by the lawmakers, when
enacting the inheritance statute, to permit the owner of an
estate falling within its provisions to continue in possession
and enjoyment of all of his property and the rents and income
therefrom during his lifetime, secure in the knowledge that,
upon advent of death, the legislative intent would be effectually
[4]  circumvented by some such device as this.  Clearly,
a *gift or a transfer* for a valuable consideration must be
*in praesenti* in order to escape the tax.  A deceased person

can have but one estate, and all property owned by him at the time of his death, including gifts or transfers previously made by him which are not to become effective until after [5] his death, is taxable. The tax imposed is upon the right to transfer, not upon the estate. (*State ex rel. Rankin* v. *District Court, supra; State ex rel. Bankers' Trust Co.* v. *Walker,* 70 Mont. 484, 226 Pac. 894; *Nunnemacher* v. *State,* 129 Wis. 190, 108 N. W. 627, *State* v. *Pabst,* 139 Wis. 561, 121 N. W. 531; *Estate of Week,* 169 Wis. 316, 172 N. W. 732; *Estate of Stephenson,* 171 Wis. 452, 177 N. W. 579. See, also, note in the opinion in *Re McKennan,* 33 L. R. A. (n. s.) 606.) In the case of *State* v. *Pabst, supra,* the supreme court of Wisconsin said, and we think correctly: "The statute was not intended to restrict persons in their right to transfer property in all legitimate ways, but it clearly manifests a purpose to tax all transfers which are accomplished by will, the intestate laws, and those made prior to death which can be classed as similar in nature and effect, because they accomplish a transfer of property under circumstances which impress on it the characteristics of a devolution made at the time of the donor's death."

Accordingly, in application of the explicit directions of the statute, the money to be paid as provided by the antenuptial contract is paid pursuant to a gift or transfer effective in possession or enjoyment only after the death of the grantor, and it is therefore properly subject to the tax.

The district court correctly construed and applied the statute, and its orders are affirmed.

*Affirmed.*

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES HOLLOWAY, STARK and MATTHEWS concur.