ESTATE OF STEPHENSON.

*April 9—May 4, 1920.*

*Taxation: Inheritance tax: Nature: Time of transfer of estate and accrual of tax: Division of estate into terms and remainders: Effect on tax: Defeat of contingent remainder: Adjustment of tax: Gifts in contemplation of death: Equitable conversion: How effected: Shares in trust estate as personalty.*

1. The inheritance tax act (secs. 1087—1 *et seq.*, Stats.) imposes a tax on the right to transfer the estate of a decedent to another person, and not upon the estate itself, which is only the measure of the tax.

2. The act imposes a tax on the transfer as of the time of the death of the transferor, at which time the tax accrues and the transfer takes place, so that the value of testator's property passing under a trust declared prior to his death was properly added to the value of the property passing under the will, and the tax assessed on the sum of both instead of on each transfer separately at the rate in effect at the time of his death.

3. Under the act the state is entitled to a tax measured by the clear market value of the property transferred, and the value of the estate for taxing purposes cannot be diminished by dividing it into term estates and remainders; and if a contingent remainder is defeated and the estate passes to another remainderman, an adjustment pursuant to sub. 6 and 8, sec. 1087—15, will be made.

4. Whether a gift is such a material part of a testator's estate as to be deemed to have been made in contemplation of death and therefore subject to the inheritance tax imposed by secs. 1087—1 *et seq.*, is in each case a judicial question.

5. In the proceedings to assess against decedent's estate the inheritance tax provided by secs. 1087—1 *et seq.*, the facts and circumstances are *held* to justify the finding of the county court that a gift to testator's daughter of $23,000 was made in contemplation of death and was therefore taxable.

6. The conversion of realty into personalty may be effected by an agreement, as a trust agreement, as well as by will or otherwise; and there need be no specific direction to sell the land to convert it into personalty, but the direction may arise by necessary implication from the nature of the instrument.

7. In view of the trust agreement—providing, among other things, that real estate may be sold though a sale is not compelled; that the personal property and the real estate constitute but one fund; that ownership in certificates passes by assignment; that it gives no title in the trust property; that it does not

descend to the heirs but goes to the administrator or execu-
tor; and that the trust does not constitute a partnership,—
shares or certificates owned by the testator in a trust created
by stockholders of his lumber company in another state where
it owned lands are *held* personalty for the purpose of sub-
jecting them to an inheritance tax under secs. 1087—1 *et seq.*

APPEALS from an order of the county court of Marinette
county: ALVIN E. DAVIS, Judge.  *Affirmed.*

May 15, 1916, Isaac Stephenson gave his daughter *Mrs.
Morgan* $23,000.  For six year previous to March 15, 1918,
he had made additional gifts to his wife, children, grand-
children, and others aggregating nearly $200,000, ranging
in amount from $7,300 to a few hundred dollars, over
$26,000 of which he gave to *Mrs. Morgan* in addition to
the $23,000 gift.

May 12, 1917, he executed and delivered a trust deed of
a portion of his property, amounting to $4,432,566.28, to
certain trustees for the benefit of himself, his wife, children,
and grandchildren.  The trust provided for trust terms and
contingent remainders to some of the *cestuis que trustent.*
March 15, 1918, he died testate leaving an estate of
$2,791,675.37.  A portion of the estate passing under the
trust deed of May 12, 1917, consisted of certificates repre-
senting 27,836½ parts in the Isaac Stephenson Company
Trustees, a trust holding lands and personal property in the
state of Michigan, which parts were of the value of
$1,394,325.  The widow elected to take under the statute
and not under the will.

The county court, for the purpose of computing the in-
heritance tax as to each beneficiary, added the value of the
property passing under the trust deed of May 12, 1917, in-
cluding the value of the certificates in the Isaac Stephenson
Company Trustees, to the value of the property passing un-
der the will, and assessed each beneficiary the tax in force
at the time of the death of the testator, allowing but one
exemption to each beneficiary.  As to *Mrs. Morgan* the
court also included in her share the gift of $23,000.  From

an order. so determining the inheritance taxes three appeals were taken by some of the beneficiaries.

For the appellant executors and trustees and certain beneficiaries under the will there was a brief signed by *Upham, Black, Russell & Richardson* of Milwaukee, attorneys, and *Harry R. Goldman* of Marinette, guardian *ad litem* for *Isaac Stephenson George, Isaac Watson Stephenson, Jr.,* and *Mary Elizabeth Stephenson,* and a reply brief by *Upham, Black, Russell & Richardson;* and the cause was argued orally by *William E. Black* and *C. C. Richardson.*

For the appellants *Martha E. Stephenson* and *Grant T. Stephenson* there were briefs by *Fawsett & Smart* of Milwaukee, and oral argument by *Charles F. Fawsett.*

For the State there was a brief by the *Attorney General, E. E. Brossard,* assistant attorney general, and *John Harrington,* inheritance tax counsel, and a separate brief by *Mr. Harrington;* and the cause was argued orally by *Mr. Brossard* and *Mr. Harrington.*

VINJE, J.   The three appeals were briefed and argued together and the assignments of errors covering all are: The court erred (1) in computing the tax on the transfers under the trust deed at the rate in effect at the time of the death of the testator instead of at the rate in effect at the time of the execution of the trust deed; (2) in adding the amount received under the will to the amount received under the trust deed and assessing the tax on the sum instead of on each transfer separately at the rate in effect at the time thereof; (3) in the method of assessing the contingent remainders; (4) in including the gift of $23,000 to *Mrs. Morgan* as taxable; and (5) in assessing a tax on the value of the certificates in the Isaac Stephenson Company Trustees.

The first two assignments of error are so closely related that it is deemed best to treat them together.   Answers to the questions, When does the tax accrue? or When does the

transfer for tax purposes take place? will largely determine whether the court erred as to either. If the tax accrues and the transfer for tax purposes occurs as of the time of the death of the testator, then the court adopted the correct rate, and was also right in adding the value of the two transfers together and taxing them as one sum. But if the tax accrues and is due and payable when the actual transfer takes place, irrespective of the death of the testator or intestate, then the court erred in assessing the tax on the value of the property under the trust deed at the rate in effect when Stephenson died, for ch. 320, Laws 1917, which took effect June 2, 1917, increased the rates in force when the trust was created on May 12, 1917, and it also erred in adding together the value of the two transfers and taxing them as one.

Stephenson was a resident of this state, hence for the purposes of this case reference need be made to only these provisions of our inheritance tax act. It provides for a tax (a) when the transfer is by a will or by the intestate laws of this state, and (b) when a transfer by gift, deed, or otherwise is made in contemplation of the death of the donor or grantor. Sub. (1), (3), sec. 1087—1, Stats. 1919. Sub. (4) of said section provides that "Such tax shall be imposed when any such person or corporation becomes beneficially entitled, in possession or expectancy, to any property or the income thereof, by any such transfer whether made before or after the passage of this act." Sub. 1, sec. 1087—5, provides that "All taxes imposed by this act shall be due and payable at the time of the transfer, except as hereinafter provided." Sec. 1087—2 reads: "When the property or any beneficial interest therein passes by any such transfer, . . . the tax hereby imposed shall be: . . ." These provisions of the statute standing alone certainly give color to the argument that when a transfer occurs the tax becomes due and payable irrespective of the time of the death of the transferor.

But language quite plain and persuasive when viewed merely in the light of its immediate context must yield in meaning to the general scope and purpose of the act of which it forms a part, if such scope and purpose is plain and unambiguous, and if the language used is susceptible of a meaning consonant with such general scope and purpose. The inheritance tax act was passed for the purpose of imposing a tax upon the transfer of the estate of a decedent to another. The tax, of course, is upon the right to the transfer, not upon the estate. *Nunnemacher v. State,* 129 Wis. 190, 108 N. W. 627; *State v. Pabst,* 139 Wis. 561, 121 N. W. 351; *Estate of Week,* 169 Wis. 316, 318, 172 N. W. 732. The latter is only the measure of the tax. The tax is a graduated one both as to amount of estate transferred and as to the relationship of the receiver to the deceased. The statute contemplates but one estate for each decedent, else there would be but little object in graduating the tax according to amount, for the estate could easily be split up into a number of gifts, trusts, or wills and intestate property, and thus the graduated feature of the statute could be entirely defeated. The law provides for transfer by will, by intestate law, and by gift in contemplation of death. These all connote testamentary or intestate disposition of an estate. Gifts made in contemplation of death for taxing purposes under the statute become a part of the estate of the decedent. A deceased person can leave but one estate. All property owned by him at the time of his death is a part of his estate, and gifts previously made in contemplation of death for taxing purposes merge in the estate. Such is the obvious scope and purpose of the law, such has been the administration under it, and such has been the construction given it by this court. *State v. Pabst,* 139 Wis. 561, 121 N. W. 351; *Estate of Bullen,* 143 Wis. 512, 128 N. W. 109; *State v. Thompson,* 154 Wis. 320, 142 N. W. 647; *Estate of Ebeling,* 169 Wis. 432, 172 N. W. 734; *Estate of Week,*

169 Wis. 316, 172 N. W. 732.   In the *Pabst Case* it is said:
"The provisions of ch. 44, Laws 1903, in words are ex-
pressive of the intent that the tax shall be imposed at the
time of the death of the transferor, in the manner and under
the conditions prescribed, upon the interests transferred by
him."   Page 584.   "The context of the law expresses as
its purpose and object that the tax shall be imposed on the
transfer at the time of the death of the decedent and rest
as a lien on the property so transferred until paid."   Page
585.   And in the same case, speaking of the provisions of
sub. 1, sec. 1087—5, the court says: "This portion of the
law does not operate to postpone the imposition of the tax
on the transfer beyond the time of the death of the trans-
feror, for, as we have seen, *the tax comes into existence at
the time of the death of the decedent."*   Page 585.   And
again, "the tax is imposed at the time of the devolution of
the property, which is at the time of the transferor's death."
Pages 586, 587.   Language could not very well be more
clear and explicit to the effect that for taxing purposes the
tax accrues and the transfer takes place as of the time of
the death of the transferor.   In *Estate of Bullen,* 143 Wis.
512, 128 N. W. 109, transfer of property made in contem-
plation of death was treated as part of the estate.   So, also,
in *State v. Thompson,* 154 Wis. 320, 142 N. W. 647; in
*Estate of Ebeling,* 169 Wis. 432, 172 N. W. 734; and in
*Estate of Week,* 169 Wis. 316, 172 N. W. 732.   In the
latter case it is said: "The transfer contemplated occurs at
the instant of death."   Page 318.

Sub. 1, sec. 1087—5, makes every administrator and
executor equally liable with a trustee or person to whom
transfer of property has been made in contemplation of
death, for the whole tax, including that on the portion of
the estate transferred in contemplation of death as well as
that transferred by will or under intestate laws.   If each
was to be taxed separately and at the actual time of transfer,

it would be unjust to hold an executor or administrator liable for a tax on property that is no part of the estate he is administering.

In view of the evident purpose of the inheritance tax act; in view of the unbroken administration of it since 1903; in view of the consistent and repeated constructions given it by this court; and in view of the fact that the construction contended for by appellants would frustrate the obvious intent of the legislature to tax estates as a unit, and would in a very material manner render necessary a reconstruction of our taxing scheme, this court cannot follow courts that have reached a different conclusion upon somewhat similar statutes. The case *In Matter of Hodges,* 215 N. Y. 447, 109 N. E. 559, decided in 1915, is especially relied upon by appellants and is squarely in point. There a different conclusion is reached. That case, however, was decided after the *Pabst Case,* which was decided in 1909, and cannot, therefore, have the weight that it might have were the question an open one in this state. Our conclusion is the county court properly added the value of the property passing under the trust to the value of the property passing under the will and applied the correct rate to the sum thereof.

The trust of May 12, 1917, was created by Stephenson for the period of the life of himself and wife and twenty-one years thereafter. A number of estates for the trust term were created, with a remainder in fee to the beneficiary of such estate. The county court assessed the estate of each such beneficiary the full present value thereof as though it passed immediately to him in fee. It is claimed that this was error and that it should have valued the term estate and the remainder estate separately and taxed each separately; that since it was uncertain whether the beneficiary would survive the trust term, he took a contingent remainder liable to be defeated by his prior death. For taxing purposes the value of an estate cannot be diminished by dividing it into term estates and remainders. The state

is entitled to an inheritance tax measured by the clear
market value of the property transferred.   Sub. (8), sec.
1087—1.   Where the term tenant and the remainderman
are the same, as in this case, there is no necessity of sepa-
rately valuing the term estate and the remainder, since the
value of one added to the value of the other always equals
the value of the whole estate.   Sub. 6, sec. 1087—15, pro-
vides that "In estimating the value of any estate or interest
in property to the beneficial enjoyment or possession where-
of there are persons . . . presently entitled thereto, no allow-
ance shall be made in respect of . . . any contingency upon
the happening of which the estate or property or some part
thereof, or interest therein, might be abridged, defeated or
diminished."   And the term estate and the contingent re-
mainder are alike both presently taxable.   Sub. 8, sec.
1087—15.

If the contingent remainder is defeated and it passes to
another remainderman, an adjustment pursuant to secs.
1087—15 and 1087—8 will be made.

The expression "lowest rate" used in sub. 8, sec.
1087—15, refers to the lowest rate based upon the relation-
ship of the beneficiary to the transferor and not to the lowest
basic rate based upon the value of the estate transferred.
For this reason, and for reasons stated in discussing the
first and second assignments of error, the court properly
refused to tax the term and remainder estates separately
where the same person was the beneficiary of both.

Did the county court err in taxing the gift of $23,000
made to *Mrs. Morgan?*   It is urged that this gift to the
daughter is only a trifle larger per cent. of the value of
Stephenson's estate than the gift of $1,000 was of the value
of the Ebeling estate (169 Wis. 432, 172 N. W. 734), which
this court held exempt because not deemed to have been
made in contemplation of death; and that it did not con-
stitute a material part of the testator's estate within the
meaning of sub. (3), sec. 1087—1, which provides, "Every

transfer by deed, grant, bargain, sale or gift, made within
six years prior to the death of the grantor, vendor or donor,
of a material part of his estate, or in the nature of a final
disposition or distribution thereof, and without an adequate
valuable consideration, shall be construed to have been made
in contemplation of death within the meaning of this sec-
tion," and was therefore not taxable.   As was stated in the
*Ebeling Case,* whether a gift is so material as to be deemed
to have been made in contemplation of death is in each case
a judicial question.   And while it must be admitted that the
ratio the gift bears to the whole estate is a very important
factor, it is not *per se* the determining factor in each case.
The size of the gift itself, irrespective of the size of the
estate, has a direct bearing upon the answer.   It was the
legislative intent that a gift of a material part of an estate
made within six years of the donor's death should not escape
taxation.   Now a large sum of money is a material part
of any estate no matter how large, because it is a matter of
substance—a matter that is not immaterial.   The gift to
*Mrs. Morgan* no doubt equals that of the average estate
probated in this state.   Add to that the fact that within the
period of six years prior to his death Stephenson had given
her over $26,000 in other gifts held not taxable, and to other
persons about $150,000 more in gifts not taxed, and it can-
not be said the court was guilty of an abuse of discretion in
finding the gift of $23,000, which was wholly unexplained,
to be a material part of testator's estate and therefore tax-
able.   Each case must be viewed in the light of its own facts
and circumstances in determining whether or not a gift is
taxable.   So viewing this case, we conclude the court not
only did not abuse its discretion in finding the fact as it did,
but that it reached the right result.

The Isaac Stephenson Company Trustees was a trust
created in 1912 by the stockholders of the I. Stephenson
Company, a Michigan corporation, which had a capital
stock of $800,000 divided into 80,000 shares of the par

value of $10 each.   In the trust the stockholders were called
certificate holders, and held certificates of parts in number
and par value equal to the number and par value of their
shares of stock.   In the trust each share was called a part.
Five trustees were created, and they were required to carry
on the lumber operations and general business of the former
corporation during the lives of two of the certificate holders
or the survivor of them, unless sooner terminated by a two-
thirds vote of the certificate holders, each part being entitled
to one vote.   The certificate holders also had the right to
remove and appoint trustees as well as terminate the trust at
any time.   When terminated, the trust property, which at
the time of Stephenson's death consisted of real estate and
personal property, but chiefly real estate, should vest in the
I. Stephenson Lumber Company, a Wisconsin corporation.
The trust agreement contained these provisions:

"The beneficial interest of each certificate holder in said
trust estate or parts of such interest may be passed by an
assignment and transfer of his or her certificate or parts
thereof, but any such beneficial interest shall not vest in the
assignee until there has been a transfer of the old certificate
upon the books of the trustees and a new certificate or cer-
tificates issued in place thereof."

"The beneficial ownership of parts of said trust estate
hereunder shall not entitle the certificate holder to any title
in or to the trust property whatsoever, or any right to call
for a partition or division of the same or for an accounting."

"It is hereby expressly declared and understood that no
partnership or partnership relations or liabilities shall be
created or established by or between the parties to this agree-
ment or any of them, their successors, legal representatives,
heirs, or assigns, by virtue of this agreement, and that this
agreement shall not be construed as creating or establishing
any partnership or partnership relations or liabilities by or
between any such parties."

"The death of a certificate holder during the continuance
of the trust shall not operate to determine the trust, nor
shall it entitle the legal representative of the deceased cer-
tificate holder to an accounting or to take any action in the

courts or elsewhere against the trustees; but the executors, administrators, or assigns of any deceased certificate holder shall succeed to the rights of said decedent under this trust upon the surrender of his certificate for the parts of said trust estate of which he had the beneficial ownership and the issuing in lieu thereof of a new certificate to the person entitled thereto."

So far as we have discovered, the trust agreement contains no provisions that in any way militate against or modify the effect of the above quoted provisions. Stephenson at the time of his death owned 27,836½ parts of the 80,000 parts of the trust, and the question arises whether such ownership was of personal property or of real estate. It is claimed on the part of the appellants that the certificates represented the ownership of an interest in real estate situated in Michigan and therefore did not constitute a taxable estate in Wisconsin. The state claims the certificates represent beneficial ownership in personal property and are therefore taxable because their situs is that of the residence of the deceased. Upon digesting the trust provisions it will be found that authority to sell real estate is given though a sale is not compelled; that the personal property and the real estate constitute but one fund; that ownership in certificates passes by assignment; that it gives no title in the trust property; that it does not descend to the heirs but goes to the administrator or executor; and that the trust does not constitute a partnership. It would be difficult to designate indicia of personal property more effectively than is done here. A declaration that the trust property shall be regarded as personal property could do no more. Indeed, that might be a misnomer if the trust contained specific provisions negativing it, for it is the substance of an agreement and not the name given it that controls. It is a fundamental rule that an equitable conversion may be effected by an agreement as well as by will or otherwise, and that there need be no specific directions to sell land to convert it into

personalty.   Such direction may arise by necessary implication from the nature of the instrument or from the language used.   6 Ruling Case Law, 1065.   Neither is there necessity for a direction to the trustees to convert land into personalty where, as here, the creators of the trust have done so.   They have by the provisions above referred to indelibly stamped the trust property as personalty by giving it all the qualities thereof for purposes essential to or convenient for the prosecution of the business of the trust.   Having made the property personalty for their own uses, it will be so considered for taxing purposes.

It may be argued that none of the above provisions taken singly are sufficient to constitute a conversion.   Thus it is said that a tax certificate which constitutes an interest in land (*Eaton v. Manitowoc Co.* 44 Wis. 489) passes by an assignment.   This is true, but it does not pass to the administrator or executor but to the heirs, as land does.   *Madler v. Kersten,* 170 Wis. 424, 175 N. W. 779.   If there be a weakness or ambiguity in any single provision there can be no reasonable doubt left when all are considered together, as they should be.   The cases of *Dana v. Treasurer,* 227 Mass. 562, 116 N. E. 941, and *Priestly v. Treasurer,* 230 Mass. 452, 120 N. E. 100, sustain the conclusion here reached under facts quite similar, while the case of *Bartlett v. Gill,* 221 Fed. 476, reaches a different conclusion.   Undoubtedly the trust certificates represent an interest in real estate, just as do mortgages, and shares of a corporation owning realty, but they must be regarded as intangible property for taxing purposes just as the latter are, because the creators of the trust have made them intangible or personal property in unmistakable terms.

*By the Court.*—Order affirmed.