GLENDENNING MOTORWAYS, INC., Respondent, vs. GREEN BAY & WESTERN RAILROAD COMPANY, Appellant.

*October 14—November 15, 1949.*

70

For the appellant there was a brief by *Fisher, Reinholdt & Peickert,* and oral argument by *William E. Fisher* and *Robert A. Fisher,* all of Stevens Point.

For the respondent there was a brief by *Stephens, Cannon, Bieberstein & Cooper,* and oral argument by *Frank M. Coyne,* all of Madison.

MARTIN, J. Defendant asserts that under the provisions of sec. 85.92, Stats., it was the duty of plaintiff's truck driver to stop at the railroad crossing.

Sec. 85.92, Stats., provides:

"Any person operating any motor vehicle described in sections 40.34 and 194.01 who shall operate, run or drive any such vehicle on or across a grade crossing with the main-line tracks of any railroad or interurban railway company, unless such crossing is protected by crossing gates or by flagmen, without coming to a full stop at a distance from such tracks of at least twenty and not more than forty feet, shall be deemed guilty of a misdemeanor, and upon conviction thereof shall be fined not less than ten dollars nor more than one hundred dollars for each offense, or be imprisoned in

the county jail for not less than ten nor more than ninety days, or be punished by both such fine and imprisonment, but the provisions of this section shall not apply to crossings with interurban railroad tracks which are laid on or along public streets within the corporate limits of any incorporated city or village. The school board or public service commission may refuse to accept the bond of any person who has been convicted of a violation of the provisions of this section, and may cancel any such bond theretofore issued if it believes that the safety of the public requires such action."

Plaintiff claims that the statute was not applicable for three reasons: (1) It was intended to apply only to buses; (2) the crossing in question had automatic blinker signals which it contends are the equivalent of flagmen; and (3) the accident did not happen on the main-line track but involved a switch engine on a sidetrack.

The trial court disregarded the first two arguments but agreed with plaintiff that the statute was not applicable because the accident happened on a sidetrack.

We will discuss this section in the order of plaintiff's claims.

(1) Examining the portion of the statute, "Any person operating any motor vehicle described in sections 40.34 and 194.01," sec. 40.34, Stats., refers generally to the transportation of school children, and sec. 194.01 (1) describes motor vehicles as follows:

" 'Motor vehicle' means any automobile, truck, trailer, semitrailer, tractor, motorbus or any self-propelled or motor-driven vehicle, except a motor-driven cycle or a vehicle operated on rails, or trackless trolley car."

Ch. 194, Stats., is the Motor Vehicle Transportation Act and confers upon the motor vehicle department and the public service commission the power, authority, and duty to supervise and regulate common motor carriers of passengers and property, contract motor carriers, and private motor carriers

for which a certificate, license, or motor-vehicle permit must be issued.

Plaintiff's argument that every private automobile would have to stop is not material here. However, its claim is without merit for an automobile would not be included under ch. 194, Stats., unless it were used for hire in the transportation of passengers or property.

In the present case plaintiff's vehicle was one of those described by sec. 194.01, Stats., and it was the driver's duty to come to the full stop contemplated by sec. 85.92.

See *Zenner v. Chicago, St. P., M. & O. R. Co.* (1935), 219 Wis. 124, 130, 262 N. W. 581; *Keegan v. Chicago, M., St. P. & P. R. Co.* (1947), 251 Wis. 7, 10, 27 N. W. (2d) 739; and *Garlock v. Chicago, M., St. P. & P. R. Co.* (1948), 252 Wis. 269, 275, 31 N. W. (2d) 582, wherein it was held that it was the duty of the motor carrier to stop.

(2) In each of the cases cited above, it was held that it was the duty of the vehicle to stop, but in all three cases the facts reveal that there were neither flagmen, gates, nor electrical devices at the crossing.

Sec. 192.29, Stats., which relates to train speed at street and highway crossings provides in sub. (1) that speed shall not exceed fifteen miles an hour while approaching and within twenty rods of any public-traveled grade crossing in any city or village. Sub. (2) provides that when gates or flagmen are maintained, trains or locomotives shall not exceed thirty miles an hour, and where an electric alarm bell or signal is maintained, the speed shall not exceed twenty miles an hour. Sub. (3) provides that the engine bell need not be rung in cities or villages where gates are operated or a flagman is stationed, but an electric alarm bell or signal is not excluded. The legislature clearly distinguished between gates and flagmen, on the one hand, and electric signals, on the other.

It is true that electric alarm bells or signals, gates, and flagmen are all to warn traffic that a train or engine is going

to cross the public-traveled grade crossing, but the gates and flagmen are a more adequate warning in that they also constitute a physical obstruction.

If the legislature had intended to include automatic electric signals in the exception contained in sec. 85.92, Stats., it would have specifically set forth such signals in the exception.

Appellant has cited *Jorgenson v. Chicago & N. W. R. Co.* (1913), 153 Wis. 108, 140 N. W. 1088; *Clark v. Chicago, M., St. P. & P. R. Co.* (1934), 214 Wis. 295, 252 N. W. 685; and *McCaffrey v. Minneapolis, St. P. & S. S. M. R. Co.* (1936), 222 Wis. 311, 267 N. W. 326, 268 N. W. 872. These cases are distinguished for the court was not confronted with the problem of whether or not a common carrier was required to stop before proceeding over the crossing.

(3) The statute provides any driver "who shall operate, run or drive any such vehicle on or across a grade crossing with the *main-line* tracks of any railroad . . . without coming to a full stop at a distance from such tracks of at least twenty and not more than forty feet, shall be deemed guilty of a misdemeanor. . . ."

It is plaintiff's contention that sec. 85.92, Stats., has no application for the reason that defendant's engine was on a sidetrack and not a main-line track. The trial court supported this opinion.

We can give no such restricted meaning to the statute before us. Its words are specific and clear.

At this intersection there were three sets of tracks in close proximity, the center track being a main-line track and the other two side or switch tracks.

It is common knowledge that main-line trains are often operated over crossings while switching operations are in progress upon switch or sidetracks over the same crossings. For this reason we are of the opinion that it was the legislature's intent to have any vehicle within sec. 85.92, Stats., stop at a grade crossing with main-line tracks even though

the railroad company is operating a train or engine upon switch or sidetracks.

In the instant case, the driver of the truck, which was a common motor carrier under the statute, failed to come to a full stop at a distance of at least twenty feet and not more than forty feet from this grade crossing as provided in sec. 85.92, Stats., and was therefore as a matter of law guilty of negligence.

The negligence of the truck driver does not relieve the railroad company if it was guilty of causal negligence. We will now consider the further facts.

As stated previously, the defendant maintains an automatic electrical signal at the intersection. It is the customary type with flashing red lights and a stop sign.

The plaintiff's driver observed the engine about one hundred feet or more to the west of the highway. The engine was on the north sidetrack and moving forward slowly.

The driver had passed through this intersection many times, was familiar with it, and knew that an automatic electric signal was maintained there. He testified that he looked at the automatic signal, that it was not working, and that because of the slow rate of travel of the engine he assumed it was about to stop. Several witnesses who were in a position to make an adequate observation likewise testified that the signal was not working and did not commence to work until the engine was from forty to seventy-five feet from the intersection. The driver testified that the signal did not go on until he was forty to fifty feet and the engine was fifty to seventy-five feet from the intersection. The engineer and fireman and other railroad employees testified that the signal was working at all times. An expert for the railroad company testified that the signal was working and was in good mechanical condition shortly after the accident.

When the driver realized that the engine was moving forward he attempted to stop before reaching the crossing, but

he was unable to do so and it appeared as though the engine would strike his cab. He then put his tractor into second gear and tried to get over the crossing before the engine entered it. He did not succeed, the engine struck the rear of his trailer which collision resulted in considerable property damage.

The fireman testified that the engine was proceeding from ten to twelve miles per hour; that he saw the plaintiff's tractor-trailer approaching and that he assumed that the plaintiff's driver would stop; that plaintiff slowed down and that he was in doubt for a matter of a few seconds whether he could stop; that when it became apparent that the plaintiff's driver would be unable to stop, he gave the emergency stop signal "plug her" and that although the engineer immediately tried to stop the engine he was unable to do so.

Both engineer and fireman further testified that the engine bell was ringing at all times and that the whistle was blown which plaintiff's driver should have heard.

It is conceded that neither the engine nor the tractor-trailer were operating at an excessive rate of speed.

Upon this evidence, the jury found the defendant railroad company causally negligent as to not giving adequate warning signals, and as to management and control, and not negligent as to lookout. Plaintiff was found causally negligent as to management and control, and not negligent as to lookout and speed. Eighty per cent negligence was assigned to defendant and twenty per cent to plaintiff's driver. However, had the driver stopped his vehicle as required by sec. 85.92, Stats., any negligence on the part of the defendant railroad company would have little causal effect.

This court has declined to set aside the jury's verdict establishing percentages of negligence. However, the power of the court to do so has been asserted with equal consistency, as well as its power, where the percentages are grossly disproportionate, to set aside the verdict and order a new trial.

In this case the jury has furnished at least a partial standard in their assessment of percentages. The facts of this case call for an application of the power of the court to consider the relative negligence of the parties. See *Zenner v. Chicago, St. P., M. & O. R. Co., supra.*

The issues when resolved on the evidence require a holding that the negligence of the plaintiff was at least equal to that of the defendant and that the complaint must be dismissed.

*By the Court.*—Judgment reversed, and cause remanded with directions to enter judgment dismissing plaintiff's complaint.