Lang, Respondent, vs. Chicago & North Western Railway Company, Appellant.

*November 29—December 30, 1949.*

*John E. Krueger* of Milwaukee, for the appellant.

For the respondent there was a brief by *Smith, Okoneski, Puchner & Tinkham,* and *Charles F. Smith, Jr.,* all of Wausau, and oral argument by *Charles F. Smith, Sr.,* and *Charles F. Smith, Jr.*

ROSENBERRY, C. J. We are confronted in this case by defendant's briefs containing one hundred sixty pages, and with a number of discrepancies in the preparation of briefs and appendix. There is a map and a number of photographs which do not comply with Rule 6 (5) (d) in that the page of record is omitted. The exhibits not printed are indexed but the page of the record where they are described is not given. A map, Exhibit 1, is frequently referred to in the testimony but not returned with the record. These lapses add materially to the labor of a reviewing court.

We see no reason why this case may not have been presented fully in a brief of fifty pages. Therefore the application of the defendant for the allowance of costs for printing more than fifty pages is denied.

In view of the conclusions at which the court has arrived it will not be necessary to state the facts of this case in detail. Such facts will be stated only as are necessary to the disposition of the case. As there must be a new trial a number of questions argued will not be considered. We conclude that the record presents jury questions as to the negligence of the parties.

On November 25, 1947, about ten o'clock in the forenoon, the plaintiff was traveling north on Pine street in the village of Marathon City. The street is paved with black-top and extends in a north and south direction. It intersects the right of way of the defendant at right angles, the track running east and west. The plaintiff turned onto Pine street

two blocks south of the point of collision. The train, which consisted of a steam locomotive, tender, and caboose, was traveling in a westerly direction on the main track. The atmosphere was clear and visibility good; the streets and highways, including Pine street, throughout the entire area were icy and slippery on the day in question. On the morning of the day in question the plaintiff had driven his children to school, which is some two or three blocks east of Pine street. He testified:

I did not have any trouble driving that morning when I took the children in to school. It was icy but I drove careful. I know I skidded when I stopped by the schoolhouse. The skidding wasn't bad. It was kind of slippery all over.

He returned to his home, did some chores, picked up his truck at the cheese factory, and went to Marathon. The plaintiff was aware of the icy condition of the streets. He testified substantially as follows:

As you drive on 107 you are going in a general easterly direction just before you strike Marathon City. It turns the corner. And then you go about half a block (east) then you turn north onto Pine street. Then I drove in low gear until I got to the caution sign. There was nothing in my way . . . and I drove through the caution sign. I kept it (truck) in second gear because it was too icy and I had to stop for the railroad track. When I got beyond the Menzner Lumber Company, just to the north, I saw a full boxcar standing on the spur track. I would judge that car from six to eight feet from the east sidewalk along the east line of Pine street. I looked to the right to see if I could see anything coming along the railroad. I didn't stop before I got onto the spur track. I was going about twelve miles an hour. I was still in second gear. I was ready to stop the truck when I seen the train. As soon as I got beyond the boxcar where I could see to the east of the boxcar I looked. I seen the train coming. When I first saw it the train was right east of the depot, coming toward the depot. When I first saw the train coming I slammed on the brakes. I skidded right into the track, right in front of the engine. It seemed to me the front of the truck went a little sideways. It hit my right

front wheel. From the time I saw the train for the first time and the time that it hit me was just about as fast as the snap of a finger. I was knocked unconscious.

Pursuant to the provisions of sec. 85.92 and sec. 194.01, Stats., the plaintiff driving his truck was required to come to a full stop at a distance from the main-line track of not less than twenty and not more than forty feet. Upon the evidence stated and other evidence the jury found the plaintiff guilty of negligence by reason of his failure to stop as required.

Upon the argument in this court much stress was placed upon the fact that a freight car, referred to by the plaintiff, obstructed the plaintiff's view to the east, and that it was therefore negligence on the part of the defendant's employees so to spot the car. Sub. (c) of the first question of the special verdict was as follows:

" . . . were the defendant's employees negligent . . . in respect to position of the freight car on the spur track?"

to which the jury answered "Yes." On this question the court instructed the jury as follows:

"A railroad company which, by leaving cars near or upon a public crossing, has obstructed the view and created an extra danger to travelers, is bound to use extra precaution in the operation of its trains by approaching the crossing at a less amount of speed or by increased warnings, or otherwise, and the fact that the crossing is within the yard of the railroad company makes no difference; and such railroad company is negligent if it leaves a car near or upon a public crossing and thereby obstructs the view and creates an extra danger to travelers without taking such extra precautions in the operation of its trains."

No authority is cited to support the instruction as applied to the facts in this case, and we find none.

It is considered that this is an incorrect statement of the law. In the first place it entirely ignores the effect of the statutory requirement that a person driving a truck across

the main-line tracks of a railway at a grade shall stop his truck at least twenty and not more than forty feet away. If the defendant's employees were guilty of negligence they were guilty at the time they spotted the car in the position in which it was at the time of the accident. The fact that subsequently the plaintiff, driving a truck, found his view obscured by the boxcar did not create the negligence, if any, of defendant's employees.

In placing the boxcar where they did, which was at a point, according to the testimony of the plaintiff, six to eight feet east of the east sidewalk on Pine street, defendant's employees had a right to assume that persons driving trucks across the intersection would obey the statutory command and come to a full stop not less than twenty nor more than forty feet from the main line. *De Wildt v. Thomson* (1942), 241 Wis. 352, 6 N. W. (2d) 173.

It is apparent that if the plaintiff had complied with the requirements of the statute no accident would have occurred.

There is reproduced herewith upon a reduced scale, a sketch showing the location of Pine street, Third street, the main-line track, and the spur track of the railway company, together with the buildings on the east side of Pine street.

From the map and the testimony of Civil Engineer Weldon Wilson it appears that the view from a point in the center of Pine street forty feet back from the intersection of Pine street and the railroad track would be one hundred ninety feet down the railroad track regardless of the position of the boxcar, whether it was two feet from the sidewalk or ten feet. It is the corner of the depot that is the controlling factor at a point forty feet back from the intersection, and the position of the boxcar has no bearing whatever on the matter. At a point twenty feet south of the center line of the main track the view would be in the vicinity of seven hundred feet. The view at a point where the center of Pine· street intersects the north rail of the upper spur track under

the same circumstances is two hundred twenty feet down the main line easterly. At a distance twenty-five feet south of the center line of the main line you can see four hundred fifty feet down the main track. All these measurements involved the center line of the track or the center line of the street. At forty feet south of the south edge of the railroad track if there was a boxcar, and within a few feet of the sidewalk, it

would not interfere with the view. The distance from the center line of the main-line track measured southerly along the center line of Pine street to the center line of the side-track is thirty-eight and one-half feet.

On these established facts it is clear that the court erred in its instructions to the jury. The statute requires a person driving a truck to stop not less than twenty nor more than forty feet from the main track. It clearly appears that the · boxcar could not have obstructed the plaintiff's view from the point where he was required to stop. The trainmen were not required to anticipate that a truck driver crossing the main-line track would violate the statutory rule and not stop.

On the part of plaintiff, on the oral argument and in the brief, there was an attempt to excuse the plaintiff's failure to stop as required by the statute, on the ground that the road was icy. To excuse the plaintiff from performing his statutory duty under the circumstances of this case would amount to nothing less than an amendment of the statute. The statute makes no exceptions. A truck driver is required under the statute to come to a full stop, not to stop at his discretion. See *Glendenning Motorways v. Green Bay & W. R. Co.* (1949), 256 Wis. 69, 39 N. W. (2d) 694, where it was held that where a tractor-trailer was being used as a common carrier, a driver failing to come to a full stop from twenty to forty feet from a grade crossing as required by statute was guilty of negligence as a matter of law.

The erroneous instruction in regard to the negligence of the trainmen in spotting the boxcar must necessarily have affected the jury's apportionment of the negligence of the parties. For that reason there must be a new trial. We have considered all the contentions of defendant but shall not discuss them in detail for the reason that in any event there must be a new trial.

*By the Court.*—The judgment appealed from is reversed and the cause remanded for trial *de novo*.

BROADFOOT, J., dissents.