BORDEN COMPANY, Respondent, vs. MINNEAPOLIS, ST. PAUL & SAULT STE. MARIE RAILWAY COMPANY, Appellant.

*September 13—October 11, 1955.*

602

For the appellant there were briefs and oral argument by *Reginald W. Nelson* of Milwaukee.

For the respondent there was a brief by *Pors & Pors* of Marshfield, and oral argument by *Charles M. Pors* and *William P. Pors*.

MARTIN, J. The Borden Company truck was a private motor carrier, as defined in sec. 194.01 (14), Stats., and the first issue raised on this appeal is the application of sec. 85.92(2), which provides, so far as material:

"Any person operating any motor vehicle described in ss. . . . 194.01 or a vehicle carrying inflammable liquids in quantities over 100 gallons who shall drive any such vehicle on or across a grade crossing with the main-line tracks of any railroad or interurban railway company, whether or not such crossing is protected by crossing protective devices or by flagmen, without coming to a full stop at a distance from such tracks of at least 20 and not more than 40 feet, shall be fined not less than $10 nor more than $100, or imprisoned not less than ten nor more than ninety days, or both. . . . The school board or public service commission may refuse to accept the bond of any person who has been convicted of a violation of the provisions of this section, and may cancel any such bond theretofore issued if it believes that the safety of the public requires such action."

The pertinent portions of sec. 194.01, Stats., provide:

"(1) 'Motor vehicle' means any automobile, truck, trailer, semitrailer, tractor, motor bus, or any self-propelled or motor driven vehicle, except a motor-driven cycle or a vehicle operated on rails, or trackless trolley car.

"(5) 'Common motor carrier' means any person who holds himself out to the public as willing to undertake for hire to transport by motor vehicle between fixed termini or over a regular route upon the public highways, passengers or property other than live stock, fluid milk, or other farm products or farm supplies transported to or from farms. The transportation of passengers in taxicab service shall not be construed as being that of a common motor carrier.

"(11) 'Contract motor carrier' means any person engaged in the transportation by motor vehicle of property for hire and not included in the term 'common motor carrier of property.'

"(14) 'Private motor carrier' means any person except a common or contract motor carrier engaged in the transportation of property by motor vehicle other than an automobile or two-wheeled trailer used therewith, upon the public highways."

These statutes were considered in *Glendenning Motorways v. Green Bay & W. R. Co.* (1949), 256 Wis. 69, 73, 39 N. W. (2d) 694, a case which involved a common motor carrier struck by a train under circumstances similar to those in this case. The driver of the truck had not stopped and plaintiff contended that he was not required to since sec. 85.92 (2), Stats., applied only to buses. It was held that it did apply because the vehicle was "one of those described by sec. 194.01, Stats., and it was the driver's duty to come to the full stop contemplated by sec. 85.92."

In *Lang v. Chicago & N. W. R. Co.* (1949), 256 Wis. 131, 40 N. W. (2d) 548, the statute was applied to a truck which was licensed as a contract motor carrier. The judgment in that case was reversed and a new trial ordered because of certain erroneous instructions with respect to the defendant's negligence; on the second trial it appeared from the evidence that at the time of the accident the truck was not being operated as a contract carrier but by, and for the personal use and benefit of, the licensee's father. On the

second appeal, *Lang v. Chicago & N. W. R. Co.* (1951), 258 Wis. 610, 614, 46 N. W. (2d) 844, this court said:

"Obviously, sec. 85.92, Stats., was enacted as a safety measure, intended for the protection of persons and property carried by licensed carriers. Defendant contends that the statute applies to every operation of the truck, whether it is being operated under its license as a carrier or not. It is true that the language is general and, if literally construed, would include every operation. We may not, however, construe it according to its strict letter if it is clear that we must do otherwise to present the intent of the legislature.

" '. . . language quite plain and persuasive when viewed merely in the light of its immediate context must yield in meaning to the general scope and purpose of the act of which it forms a part, if such scope and purpose is plain and unambiguous, and if the language used is susceptible of a meaning consonant with such general scope and purpose.' *Estate of Stephenson,* 171 Wis. 452, 456, 177 N. W. 579.

"It is only when a vehicle is being operated in pursuit of a licensed purpose that the provisions of sec. 85.92, Stats., apply.

"We should also observe that violation of the statute carries a penalty, and that in case of uncertainty a penal statute should be read so as to minimize rather than to extend its penal character; it must be construed to exclude acts not clearly within the legislative purpose. *State ex rel. Shinners v. Grossman,* 213 Wis. 135, 250 N. W. 832."

In support of its contention that a private motor carrier is included among the vehicles to which the statute applies, appellant cites *Riley v. Chicago & N. W. R. Co.* (1949), 255 Wis. 172, 38 N. W. (2d) 522, and *DeRousseau v. Chicago, St. P., M. & O. R. Co.* (1949), 256 Wis. 19, 39 N. W. (2d) 764, but they are not in point. In both cases warning signals were operating at the time and any vehicle was required to stop.

It is appellant's position that the holding of the second *Lang Case* does not govern here because the Borden truck

was being used in pursuit of the purposes for which its permit had been issued.

Such a view ignores the fundamental purpose of the statute, which this court held to be the "protection of persons and property carried by licensed carriers." It is to be noted that sec. 85.92 (2), Stats., gives to the public service commission certain control over persons who have violated the section. In conferring upon the public service commission its various powers and duties, the legislature declared its purpose and policy to be "to protect the safety and welfare of the traveling and shipping public in their use of the highways." Sec. 194.02. A further declaration is contained in sec. 194.06:

"The business of all common motor carriers of property or of passengers and of contract motor carriers is hereby declared to be affected with a public interest."

It would seem that if the legislature considered the operation of private carriers to be affected with a public interest, it would have included them in such declaration.

In sec. 194.01 (15), Stats., in defining the phrase "for hire,"—which, it may be noted, is used in sec. 194.01 (5) (common motor carrier) and in sec. 194.01 (11) (contract motor carrier) but is not used in sec. 194.01 (14) (private motor carrier),—the legislature has stated that, "Nothing herein contained shall be construed to include motor-vehicle operations which are conducted merely as an incident to or in furtherance of any business or industrial activity."

At the time of this accident the truck of the Borden Company was a private motor carrier operating as an incident to and in furtherance of the Borden Company's business. We see no public interest involved in the protection of its property while being transported in its own carrier.

The fact that a large truck of this type, if struck by a train, may cause derailment and damage to the public traveling or shipping via railroad, as appellant points out, does not

compel the conclusion that the legislature considered the operation of private motor carriers generally to involve a public interest. Private carriers are not all large tractor-trailer vehicles. If the legislature had considered the operation of private carriers over a certain weight a danger to the public, it could have specifically included them in sec. 85.92 (2), Stats., as it did carriers of more than 100 gallons of inflammable liquids. From a realistic view it appears to us that a far greater danger to the public would be created in the congestion and confusion which would very likely arise at railroad crossings if all private carriers would be required to stop.

The distinction argued between this case and the *Lang Case* in 258 Wisconsin is a distinction without a difference. It is our opinion that the provisions of sec. 85.92 (2), Stats., do not apply to a private carrier operating in pursuit of the purposes for which its permit is issued.

The second question presented on this appeal is whether the negligence of respondent's driver as to lookout was at least equal, as a matter of law, to that of the appellant's signal operator in failing to give a timely warning. This court has said on innumerable occasions that instances where it is clear as a matter of law that the negligence of a plaintiff equals or exceeds that of the defendant are rare and that generally the comparison is for the jury. It was for the jury in this case. The jury had the right to consider whether the Borden driver's negligence was mitigated in some degree by the absence of the warning which, together with testimony that there was a flow of vehicular traffic across the tracks in both directions at the time, constituted an invitation to cross in safety. The circumstances present, and the inferences to be drawn from the testimony with respect to such circumstances, make the apportionment a matter for determination by the jury.

Finally, it is contended that the truck driver's negligence was the sole proximate cause of the accident in that it inter-

vened between that of the railroad and the accident. The jury found causal negligence on the part of the railroad. In *Ryan v. Cameron* (1955), ante, p. 325, 331, 71 N. W. (2d) 408, it was held:

"If the jury does find that the negligence of the first actor was a substantial factor in causing the accident, then the defense of intervening cause is unavailing unless the court determines as a matter of law that there are policy factors which should relieve the first actor from liability. Ibid. As Professor Richard V. Campbell points out in his recent article in January, 1955 Wisconsin Law Review, 5, at page 40, it is at this point that the principles of Restatement, 2 Torts, p. 1196, sec. 447, should be used by the court as an aid in deciding such policy factors."

It does not appear that the question was raised before the trial court, as it should have been in order to be considered here, but an examination of the principles set forth in the Restatement referred to convinces us that no factors existed in this case which would relieve appellant from liability on the ground of intervening cause.

*By the Court.*—Judgment affirmed.